IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 7, 2017 Session

## CARLOS SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 10-02597    Paula Skahan, Judge**

_____

### No. W2016-01087-CCA-R3-PC

_____

The petitioner, Carlos Smith, appeals the denial of post-conviction relief from his 2012 Shelby County Criminal Court jury convictions of attempted second degree murder, aggravated assault, aggravated robbery, especially aggravated burglary, employing a firearm during the commission of a dangerous felony, and being a felon in possession of a handgun, claiming that he was denied the effective assistance of counsel at trial. Because the post-conviction court failed to make any findings with regard to the petitioner's claim that trial counsel did not properly inform him of his potential sentencing exposure, we remand for the limited purpose of making the requisite findings on this issue. In all other respects, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed in Part; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Joshua B. Dougan, Jackson, Tennessee (on appeal), and Eugene Belenitsky, Memphis, Tennessee (at hearing), for the appellant, Carlos Smith.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Fleming Stark and Sam Winnig, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

A Shelby County Criminal Court jury convicted the petitioner of two counts each of attempted second degree murder and aggravated assault, and one count each of aggravated robbery, especially aggravated burglary, employing a firearm during commission of a dangerous felony, and being a felon in possession of a handgun, and the

trial court imposed an effective sentence of 120 years' incarceration. This court affirmed the convictions on direct appeal. *See State v. Carlos Smith*, No. W2012-01931-CCA-R3-CD (Tenn. Crim. App., Jackson, Aug. 29, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014).

In *Carlos Smith*, this court stated the facts of the case as follows:

Late in the evening of November 2, 2009, the defendant, his girlfriend, Kelsie Brunner, and his friend, Carl Hall, decided to rob Reginald Milam. The defendant, Ms. Brunner, and Mr. Hall proceeded to a local Wal-Mart, where Ms. Brunner purchased two ski masks, a pair of gloves and a set of bolt cutters. Ms. Brunner then drove the men to Mr. Milam's residence. The defendant and Mr. Hall exited the vehicle, wearing the ski masks rolled up on their heads to resemble caps.

The defendant and Mr. Hall accosted George McColley, Jr., and Richard Hardin, Mr. Milam's brother-in-law, as the two gentlemen were returning to Mr. Milam's residence, where they resided. The defendant and Mr. Hall, both of whom were armed and wearing ski masks, forced Mr. McColley and Mr. Hardin into the residence at gunpoint, demanding to see Mr. Milam. In a back bedroom of the residence, the gunmen encountered Mr. Milam, his wife, Lillian Hardin, and two of the couple's grandchildren. The defendant held them all, including Mr. McColley and Mr. Hardin, at gunpoint and demanded money. Renell Hardin, Mr. Milam's and Mrs. Hardin's adult daughter, heard the commotion and exited her bedroom. When the defendant and Mr. Hall noticed her, they forced her into the back bedroom at gunpoint. At some point during the fracas, a struggle ensued, and the defendant and Mr. Hall shot both Mr. Hardin and Mr. McColley. Mr. McColley also managed to stab Mr. Hall in the back of the neck. The defendant and Mr. Hall then fled the scene with approximately $300 to $400 in cash, and they returned to Ms. Brunner's vehicle. The defendant told Ms. Brunner that "the people in the house weren't compliant, that they got into a physical altercation and at that point [the defendant] had to shoot them."

On April 15, 2010, the Shelby County grand jury issued an 11-count indictment against the defendant, Mr. Hall, and Ms. Brunner, stemming from these criminal offenses. The defendant was charged with two counts of attempted second degree murder in the shootings of Mr. Hardin and Mr. McColley, and two counts of aggravated assault against Mrs. Hardin and her daughter, Renell Hardin. In addition, the defendant was charged with the aggravated robbery of Mr. Milam, the especially aggravated burglary of Mr. Hardin's residence, employing a firearm during the commission of a dangerous felony, and being a felon in the possession of a handgun.

The trial court conducted a jury trial in January 2012. Mr. McColley, Mr. Hardin, Mrs. Hardin, Ms. Renell Hardin, and Lajettie Pegues, one of Mr. Milam's and Mrs. Hardin's daughters, all provided similar testimony about the events of November 2-3, 2009. Ms. Brunner testified that she had been charged with facilitation of especially aggravated robbery for her role in the offenses and confirmed that she had been convicted of the felony of reckless aggravated assault in 2008. Ms. Brunner denied that she had been offered a deal in exchange for her testimony against the defendant. Christina Lane with the Shelby County Criminal Court Clerk's Office testified that the defendant was charged with aggravated robbery in July 2000 and that he was ultimately convicted of that crime. Immediately following Ms. Lane's testimony, the trial court instructed the jury as follows:

> Ladies and gentlemen, if from the evidence presented you find that [the defendant] has been convicted of a prior crime you can consider that evidence only for the purpose of its effect on the count of the indictment that alleges that he is a convicted felon in possession of a firearm. You are not to consider it for any other purpose. It doesn't go to whether he's guilty, or not guilty of any of the other charges involved in any of the other counts of the indictment. It is

only being allowed to be presented to you for the sole purpose of that particular count that alleges that he has previously been convicted of a felony. But, you are not to base you[r] decision on the rest of the charges based upon that conviction. Only for that count of the indictment are you to use it.

Once the State rested its case, the defendant moved for a judgment of acquittal, which the trial court denied. Following a *Momon* colloquy, *see State v. Momon*, 18 S.W.3d 152, 161-62 (Tenn. 1999), the defendant elected not to testify and chose to present proof. The jury convicted the defendant as charged on all counts. Following a sentencing hearing, the trial court imposed an effective sentence of 120 years' incarceration.

*Id.*, slip op. at 1-3.

On June 24, 2014, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court conducted an evidentiary hearing on October 30, 2015 and February 8, 2016.

At the evidentiary hearing, trial counsel testified that he attempted to shield the jury from learning that the petitioner had a prior conviction of aggravated robbery. Trial counsel explained that he had sought to sever the felon in possession of a firearm count from the other charges in the indictment to avoid the jury's learning that the petitioner had a prior conviction of aggravated robbery. Trial counsel lost this motion, however, and during the middle of the petitioner's trial, he objected to a sheriff's department employee's testimony regarding the petitioner's fingerprints matching a set of prints that were already in the fingerprint system. Trial counsel explained that, during a bench conference, he attempted to stipulate that the petitioner had a prior conviction of aggravated robbery.

With respect to plea offers, trial counsel "[d]efinitely" recalled discussing an offer with the petitioner. Although trial counsel could not recall the exact nature of the offer, he testified that it was "a pretty substantial offer" but that the petitioner refused to consider it. Trial counsel stated that his typical practice with respect to rejected plea

- 4 -

offers was to "put the defendant on the witness stand," recount the plea offer, and have the defendant state "that he did not want the offer and he wanted a trial," although counsel could not recall with any specificity whether he had done so in this instance. Trial counsel testified that he had told the petitioner that "he would get a lot more time" if he was found guilty at trial and that he thought he had discussed with the petitioner his status as a career offender. Trial counsel agreed that the State's notice of impeaching conduct listed nine prior felony convictions and that counsel was on notice that the petitioner was a career offender. Trial counsel also conceded that, during the petitioner's sentencing hearing, he argued that several of the petitioner's prior aggravated robbery convictions should be considered as a single conviction for the purpose of calculating his sentencing range. When asked if he informed the petitioner that all of his prior aggravated robbery convictions counted as a single conviction for sentencing purposes, trial counsel responded that he did not believe he had discussed it with the petitioner "in that kind of detail" but that the petitioner knew that if we was convicted at trial "that he would . . . certainly . . . get a lot more time than the State offered him."

On cross-examination, trial counsel agreed that he had argued vehemently in favor of severing the felon in possession of a handgun count from the other charges in order to prevent the jury from learning that the petitioner had a prior conviction of aggravated robbery but that the trial court had ruled against him. Trial counsel conceded that he had attempted to stipulate that the petitioner was the individual named in the indictment charging him with being a felon in possession of a firearm in order to avoid the testimony about his fingerprints.

Trial counsel reiterated that the petitioner "was adamant . . . that he wanted a trial and he really didn't want to consider any offer." Counsel also noted that he had represented the petitioner on prior occasions and that he had a "pretty good relation[ship]" with the petitioner. Because trial counsel took over the petitioner's case nearly one year after the petitioner was charged with the instant crimes, he thought it was possible that the plea offer had already been extended to the petitioner when he had been represented by a member of the public defender's office, Michael Johnson, but that, in any event, he recalled "discussing the offer with" the prosecutor.

With respect to counsel's sentencing hearing argument that the petitioner's prior aggravated robbery convictions should count as only two convictions, trial counsel agreed that he had presented that argument to the trial court as a "plausible theor[y]."

On redirect examination, counsel was asked to clarify the exact nature of the stipulation he was offering to make during the course of the petitioner's trial, and trial counsel responded thusly:

My whole purpose was that the jury should not be advised that [the petitioner] had a prior conviction, you know, when they're trying, you know, the indictment where they allege that he was a convicted felon, you know, for that particular felony to tell that to the jury on the front end would be prejudicial. So when I articulated my position we would stipulate that he was, he's the same one that was convicted, you know, at that period of time which was alleged in the indictment and that's what we would stipulate so it would not have to be brought before the jury. That was the stipulation. That would result in the bifurcated hearing.

Pamela Fleming Stark testified that she was the prosecuting attorney for the petitioner's trial. Ms. Stark was "pretty sure that" there were no plea offers made to the petitioner during the time period in which trial counsel represented him. She acknowledged that trial counsel might "have asked [her] what the original offer was" and might "have attempted to take it to [the petitioner] in hoping that he could convince [her] to let him have it" but that, because the petitioner's case was already set for trial when trial counsel took over the case, Ms. Stark could not imagine extending an offer at that time. Ms. Stark agreed that co-defendant Carl Hall had entered an open plea on the day of trial; that Mr. Hall had "showed some remorse and begged to testif[y]"; and that she had argued in favor of Mr. Hall's receiving a lesser sentence than the petitioner because the petitioner's criminal record was substantially worse than that of Mr. Hall. Ms. Stark testified that she did not have a notation in the petitioner's file about a plea offer:

This is the type of case a lot of times I won't even make an offer on because people were shot in their own home. However, knowing Mr. Johnson and having worked with him for many years I probably would have given him something for no other reason than there was no support in this trial, the proof was so good.

We had DNA evidence not only from the ski masks that were found just a short distance, as I recall, from the hospital where they threw Mr. Carl Hall out to get treatment for his gunshot wounds. And then further down the road there w[as] a bag of, I think there was a glove that was thrown in a garbage can at a convenien[ce] store. And then further down in an abandon[ed] lot a bag with I believe the

- 6 -

guns in it was there. And there was DNA off the guns as well as DNA off the other and there may have actually been ballistics in this case as well. All of which Ms. Brunner brought us back to and all of which came back to Carlos Smith.

. . . .

Meaning that –

. . . .

--I would have felt bad for the defense attorney that had the case. And I would [have] made an offer. So exactly what it was, it would [have] been high especially with [the petitioner] because he had a series of aggravated robberies and clearly in my opinion wouldn't have learned anything from it. I would [have] thought he was a very dangerous person. But I would have given an offer of some nature that would [have] been considerably lower than the hundred and twenty years that he got. I think probably something around sixty years. But [the petitioner] didn't want it.

When questioned about trial counsel's attempt to stipulate to the petitioner's prior conviction, Ms. Stark testified as follows:

That's not what happened at all. I mean, you can read it in the transcripts. [Trial counsel] repeatedly tried to bifurcate the process as far as having the convicted felon in possession of a handgun tried at the same time. I argued that that was not case law and [the trial court] agreed with me. And it wasn't the current case law. There was no reason for bifurcation and it was not bifurcated.

After the indictment had long since [been] read, we were in the middle of our proof and ending the proof, we went to have [the petitioner] fingerprinted and put the fingerprint, an R&I expert on, and that is when [trial counsel] agreed to stipulate at that point that he was the person in the indictment. By time it was long past when we read the

indictment and we'd already read the indictment listing the charge.

So it would [have] been of no purpose at that point to stipulate to a felony and it wouldn't [have] shielded the jury from anything. It wouldn't [have] shielded the [petitioner] from anything. When I read the indictment inside the indictment itself for that count list[s] what crime he had been convicted of. And that's how all convicted felon in possession of a handgun indictment counts are.

. . . .

Now I can't say what [trial counsel] thought he was stipulating to. But the argument that the judge and I were having with [trial counsel] and the case I was wanting to put on was that I just didn't want [Mr. Stein] to say he's the person in that indictment number. I wanted to prove given the name that it was one [and] the same person.

But it was never an issue of stipulating to the felony itself. We were calling the R&I person. In fact, there's proof submitted, an offer of proof submitted with the R&I person sitting here about the fingerprinting.

The petitioner testified that trial counsel never informed him that he was considered a career offender, but the petitioner conceded that the trial court informed him, prior to setting the case for trial, of the potential sentence he was facing for each felony conviction. The petitioner recalled that, at his sentencing hearing, trial counsel argued to the court that the petitioner was not a career offender, and the petitioner testified that trial counsel never indicated to him that his six prior convictions of aggravated robbery, which all arose "at one time," would be counted as six separate felonies. The petitioner stated that he would not have proceeded to trial if he had been made aware of his potential exposure. The petitioner believed that he would be sentenced as a Range II offender.

According to the petitioner, the State had offered him a plea of 25 years at 100 percent service, and the petitioner recalled that the State extended this offer to him both while he was represented by Mr. Johnson and again when trial counsel took over his case.

- 8 -

On cross-examination, the petitioner denied that Mr. Johnson had ever discussed his potential exposure with him, even when Mr. Johnson presented the plea offer to the petitioner. The petitioner also denied that the trial court had ever informed him of his potential exposure, although he admitted that the trial court had voir dired him prior to setting the case for trial. The petitioner eventually conceded that the proof against him, including the testimony of his codefendants, DNA evidence, video surveillance footage from Walmart, and evidence that the vehicle and handgun were linked to the petitioner, was substantial.

Mr. Johnson testified for the State and stated that he had represented the petitioner until shortly before the petitioner's initial trial date, at which time trial counsel substituted in to represent the petitioner. Mr. Johnson admitted that he did not recall the petitioner with any specificity, but he testified that he "[a]bsolutely" would have informed his clients that prior convictions for violent felonies would not have been considered a single felony. Mr. Johnson denied that he ever would have set a case for trial without first informing his client of his potential exposure. With respect to the petitioner's status as a career offender, Mr. Johnson stated that he "[a]bsolutely" would have informed the petitioner of this information. Mr. Johnson testified that, if the petitioner had received a plea offer of 25 years at 100 percent service, he likely would have recommended that the petitioner take it "if the proof [was] that overwhelming" because 25 years would have been "better than the alternative if he were to go to trial." Mr. Johnson confirmed, however, that the decision of whether to accept a plea offer would have been ultimately left to the petitioner and that he never would have allowed the petitioner to make such a decision without being fully informed of the potential sentence he would be facing.

On cross-examination, Mr. Johnson admitted that he did not recall the specifics of the petitioner's case, but he insisted that he "told [the petitioner] what his exposure was and told him what the offer was without any hesitation whatsoever."

With this evidence, the post-conviction court denied relief, finding that, although trial counsel had "properly stipulated to the [p]etitioner's prior felony conviction in order to protect the jury from hearing that the [p]etitioner was previously charged with aggravated robbery," the petitioner failed to show that this tactical decision by trial counsel resulted in deficient representation or that, but for this alleged deficiency, the outcome would have differed. The post-conviction court found that the petitioner failed to establish by clear and convincing evidence that he had received ineffective assistance of counsel. The post-conviction court did not, however, make any findings regarding the petitioner's knowledge of his exposure at sentencing.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to shield the jury from learning of his prior aggravated robbery conviction and by failing to raise the issue on direct appeal. In addition, the petitioner argues that trial counsel was deficient by failing to inform him of his status as a career offender and his potential sentence exposure. The State contends that the court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he

petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Turning first to the petitioner's claim regarding his alleged stipulation, we find that, because of the necessity of proving that the petitioner was a convicted felon in order to show that he was, in fact, a felon in possession of a handgun, it was necessary for the jury to discover his status as a felon. However, even if the petitioner had actually *properly* stipulated to the petitioner's prior felony conviction – and our reading of the transcript does not convince us that he did – given the overwhelming evidence of the petitioner's guilt, we cannot say that the petitioner was in any way prejudiced by this information. *See Strickland*, 466 U.S. at 697.

It bears noting that the prosecutor, Ms. Stark, in testifying at the post-conviction hearing, referenced trial counsel's repeated efforts to "bifurcate the process as far as having the convicted felon in possession of a handgun tried at the same time." Our review of the record before us reveals that trial counsel did not actually seek bifurcation at any point; rather, he sought to *sever* the felon in possession of a firearm charge from the other counts in the indictment. The parties argued the issue of severance prior to trial, the trial court denied trial counsel's motion, and we affirmed the denial of severance on direct appeal. *Carlos Smith*, slip op. at 7. Thus, it appears that Ms. Stark mistakenly referred to bifurcation at the post-conviction hearing when she actually meant severance, and it is likely that trial counsel was intending to seek bifurcation of the felon in possession charge prior to trial but he erroneously moved for severance of the charges. Although trial counsel may have been deficient in failing to properly seek bifurcation, any deficiency was not prejudicial given, as previously stated, the overwhelming proof of the petitioner's guilt.

With respect to the petitioner's claim that trial counsel failed to adequately inform him of his career offender status, thus resulting in the petitioner's rejection of a plea offer, we find that the post-conviction court failed to make any findings regarding this issue. Accordingly, we remand this case to the post-conviction court for the limited purpose of determining whether trial counsel was ineffective in this regard, and such findings must be made based on the existing record. In all other respects, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE